543 F.2d 1210
 9 ERC 1417, 7 Envtl. L. Rep. 20,051
 UNITED STATES of America et al., Plaintiffs-Appellees,
Minnesota Environmental Law Institute, Inc., et al.,
Plaintiffs-Intervenors-Appellees,
State of Minnesota and Minnesota Pollution Control Agency,
Plaintiffs-Appellees-Appellants,
v.
RESERVE MINING COMPANY et al., Defendants-Appellants-Appellees,
Northern Minnesota Development Association et al.,
Defendants-Intervenors-Appellants.
 Nos. 76-1405, 76-1454, 76-1608 and 76-1655.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 13, 1976.
Decided Oct. 28, 1976.
 
 Edward T. Fride, Duluth, Minn., Wayne G. Johnson, Silver Bay, Minn., for Reserve Mining Co., et al., O. C. Adamson, II, Minneapolis, Minn., Raymond L. Erickson, Duluth, Minn., Maclay R. Hyde and Timothy H. Butler, William T. Egan, G. Alan Cunningham, Minneapolis, Minn., on the briefs.
 Peter R. Taft, Asst. Atty. Gen., U. S. Dept. of Justice, Washington, D. C., for the U. S.; Edmund B. Clark, Alfred T. Ghiorzi and John E. Varnum, Attys., Dept. of Justice, G. William Frick, Gen. Counsel, Pamela P. Quinn, E. P. A., Washington, D. C., on the briefs.
 Philip Mause, Washington D. C., for Environmental Defense Fund, Inc.; Howard J. Vogel, St. Paul, Minn., on the briefs.
 Byron E. Starns, Chief Deputy Atty. Gen., St. Paul, Minn., for State of Minn.; Warren R. Spannaus, Atty. Gen., State of Minn., James M. Schoessler and Alan R. Mitchell, Sp. Asst. Attys. Gen., St. Paul, Minn., on the briefs.
 Robert B. McConnell, Asst. Atty. Gen., Madison, Wis., for State of Wis.; Bronson C. LaFollette, Atty. Gen. of Wis., on the briefs.
 William P. Dinan, Duluth, Minn., for City of Duluth.
 Randall W. Whitworth, Lansing, Mich., for the State of Mich.; Frank J. Kelley, Atty. Gen., Robert Derengoski, Sol. Gen., Jerome Malsowski, Russell E. Prins, Asst. Attys. Gen., Lansing, Mich., on the briefs.
 Johnson & Thomas, Silver Bay, Steven J. Seiler, John M. Donovan, Duluth, Minn., Bruce Anderson, Two Harbors, Minn., Keith Brownell, Duluth, Minn., Fred Cina, Aurora, Minn., on brief for Northeastern Minn. Development Assn., Duluth Area Chamber of Commerce, Village of Babbitt, Village of Beaver Bay, Range League of Municipalities & Civic Assns., St. Louis County, Silver Bay Chamber of Commerce, Village of Silver Bay, Town of Beaver Bay, Lake County Lax Lake Property Owners Assn.
 Before LAY, BRIGHT, ROSS, STEPHENSON and HENLEY, Circuit Judges, en banc.
 BRIGHT, Circuit Judge.
 
 
 1
 These appeals relate to matters which remained with the district court for further consideration following our decision in Reserve Mining Co. v. Environmental Protection Agency, 514 F.2d 492 (1975).[1]
 
 
 2
 In particular, these appeals raise questions concerning the propriety of the rulings of the district judge (Hon. Edward Devitt, Chief Judge) in levying fines and penalties against Reserve Mining Company and its parent companies, Armco and Republic Steel, imposing sanctions for failure of Reserve Mining Company to make discovery, and ordering closure of Reserve's operations. We have carefully reviewed the rulings of Chief Judge Devitt reported at 412 F.Supp. 705. We affirm, subject to our comments below.
 
 
 3
 After remand of this case, the district court, after hearings, entered judgment on May 5, 1976, as follows: (a) assessing costs and penalties against the defendants (Reserve, Armco, and Republic) in the sum of $837,500, for violation of state-granted water discharge permits for 335 days at $2,500 per day from May 20, 1973 to April 20, 1974; (b) assessing attorneys' fees and costs against defendants and in favor of plaintiffs in the sum of $200,000 for violation of court orders as to discovery.[2]
 
 
 4
 Reserve, Armco, and Republic have appealed those determinations. Minnesota has cross-appealed, asserting error in the district court's refusal to assess penalties for other violations of Minnesota Pollution Control laws by Reserve and for refusing recovery of all litigation costs incurred by the State of Minnesota.
 
 
 5
 On July 7, 1976, Chief Judge Devitt entered a further order directing that Reserve and its parent corporations, Armco and Republic, cease discharge of taconite tailings into Lake Superior at midnight on July 7, 1977 (one year from the date of that order). 417 F.Supp. 789 (D.Minn.1976). Reserve, Armco, and Republic have appealed that order.
 
 
 6
 We discuss these issues on appeal in reverse order.
 
 
 7
 I. Plant Closure.
 
 In our earlier opinion we said:
 
 8
 Should Minnesota and Reserve be unable to agree on an on-land disposal site within (a) reasonable time period, Reserve, Armco and Republic Steel must be given a reasonable period of time thereafter to phase out the Silver Bay facility. In the interests of delineating the rights of the parties to the fullest extent possible, this additional period of time is set at one year after Minnesota's final administrative determination that it will offer Reserve no site acceptable to Reserve for on-land disposal of tailings. (514 F.2d 538.)
 
 
 9
 In response to this directive Judge Devitt ruled:
 
 
 10
 Now, after almost 16 months of study, discussion, negotiation, debate, extensive hearings and official actions by state agencies, no agreement has been reached: Reserve still demands Milepost 7 which Minnesota will not permit, and Minnesota offers Milepost 20 which Reserve does not want.
 
 
 11
 Reserve argues that there has not been final administrative action until after judicial review of the state agencies' decisions. This contention, however, is belied by the court's use of the language "final administrative " action, would be inconsistent with the federal courts' oft-expressed concern for expeditious determination of this matter, and would occasion even further protracted hearings and legal proceedings in derogation of the public's right to a final resolution of this lawsuit.
 
 
 12
 Reserve has not made a showing through the affidavit of its Executive Vice President Banovitz that there are significant new scientific or medical studies bearing on the health hazard which justify a modification of the time limits set by the Court of Appeals.
 
 
 13
 On the basis of the files and records, I FIND that Minnesota has made a "final administrative determination that it will offer Reserve no site acceptable to Reserve for on-land disposal of tailings" and DIRECT that Reserve and its parent corporations cease discharge of taconite tailings into Lake Superior one year from today, at midnight on July 7, 1977. (417 F.Supp. 789, 791 (emphasis in original).)
 
 
 14
 The district judge properly construed our mandate and his ruling must be affirmed.
 
 
 15
 We add this caveat. The parties have recognized in oral argument, as we also recognize, that under changed circumstances, such as, for example, resolution of the on-land disposal controversy by agreement or through litigation in state court, appellants and other parties are not barred from seeking modification of the closure order from the district court.[3]II. Fines, Penalties, and Sanctions.
 
 
 16
 For reasons set forth in the district court opinion 412 F.Supp. 705, we affirm those rulings relating to fines, penalties, costs of litigation, and sanctions, with a modification of the district court's reasons for imposing the fine.
 
 
 17
 In assessing this fine of $837,500, Judge Devitt wrote:
 
 
 18
 In 1947 Reserve obtained from two state agencies, identical permits authorizing it to discharge tailings into Lake Superior. Subsection (d) of those permits prohibits discharges which
 
 
 19
 result in any material clouding or discoloration of the water at the surface outside of (the specified discharge) zone . . . nor shall such tailings be discharged so as to result in any material adverse effects on . . . public water supplies. . . .
 
 
 20
 The district court concluded that "the terms of the permits are being violated" because
 
 
 21
 (t)he discharge causes discoloration of the surface water outside of the zone of discharge, causes an increase in turbidity, and adversely affects the public water supplies of several communities resulting in unlawful pollution of the lake. Id. at 59. (380 F.Supp.)
 
 The court of appeals agreed, stating that:
 
 22
 The record shows that Reserve is discharging a substance into Lake Superior waters which under an acceptable but unproved medical theory may be considered as carcinogenic. (T)his discharge gives rise to reasonable medical concern over the public health. Reserve Mining Co. v. Environmental Protection Agency, 514 F.2d 492, 529 (8th Cir. 1975).
 
 
 23
 Clearly, these findings justify the conclusion that Reserve violated its discharge permits. The trial court has determined that Reserve was in violation of its state discharge permits every day during the May 20, 1973 to April 20, 1974 period. United States v. Reserve Mining Co., 380 F.Supp. 11, 48 (D.Minn.1974).
 
 
 24
 Minn.Stat. § 115.45 (1974) requires Reserve to comply with the terms of its state permits or be subject to the penalties authorized by Minn.Stat. § 115.071 subd. 3 (1974). (412 F.Supp. 708-09.)
 
 
 25
 The term "reasonable medical concern" over the public health relating to the discharge into Lake Superior as used in our prior opinion, see 514 F.2d 492, 529; see also pp. 500, 514-20, does not appear to be equivalent to "material adverse effects * * * on public water supplies(,)" the crucial phrase used in the state permit,[4] for as we noted in that prior opinion,
 
 
 26
 (w)ith respect to the water, these probabilities (as hazards to health) must be deemed low for they do not rest on a history of past health harm attributable to ingestion but on a medical theory implicating the ingestion of asbestos fibers as a causative factor in increasing the rates of gastrointestinal cancer among asbestos workers. * * * But, the hazard in both the air and water can be measured in only the most general terms as a concern for the public health resting upon a reasonable medical theory. * * * (514 F.2d 536.)
 
 
 27
 Accordingly, while we affirm the assessment of this fine against Reserve, we do so only upon the basis that these discharges violated Reserve's state permits by causing clouding and discoloration of the surface waters outside of the specified zone of discharge, not due to turbidity from natural conditions outside said zone as may be caused by storms.
 
 
 28
 Affirmed and remanded to the district court.
 
 
 
 [1]
 The long saga of this litigation is related in the following reported cases: United States v. Reserve Mining Co., 56 F.R.D. 408 (D.Minn.1972); Armco Steel Corp. v. United States, 490 F.2d 688 (8th Cir. 1974); United States v. Reserve Mining Co., 380 F.Supp. 11 (D.Minn.1974); Reserve Mining Co. v. United States, 498 F.2d 1073 (8th Cir. 1974); Minnesota v. Reserve Mining Co., 418 U.S. 911, 94 S.Ct. 3203, 41 L.Ed.2d 1156 (1974); Minnesota v. Reserve Mining Co., 419 U.S. 802, 95 S.Ct. 287, 42 L.Ed.2d 33 (1974); United States v. Reserve Mining Co., 394 F.Supp. 233 (D.Minn.1974); Reserve Mining Co. v. Environmental Protection Agency, 514 F.2d 492 (8th Cir. 1975); Minnesota v. Reserve Mining Co., 420 U.S. 1000, 95 S.Ct. 1441, 43 L.Ed.2d 758 (1975); Reserve Mining Co. v. Lord, 529 F.2d 181 (8th Cir. 1976); United States v. Reserve Mining Co., 408 F.Supp. 1212 (D.Minn.1976); United States v. Reserve Mining Co., 412 F.Supp. 705 (D.Minn.1976); United States v. Reserve Mining Co., 417 F.Supp. 789 (D.Minn.1976); and United States v. Reserve Mining Co., 417 F.Supp. 791 (D.Minn.1976)
 
 
 [2]
 The court also ordered:
 
 
 [3]
 The city of Duluth is entitled to be reimbursed in the approximate sum of $22,920.00 for furnishing interim clean water facilities and supplies to its residents. (412 F.Supp. 714.)
 This ruling has not been appealed.
 
 
 [3]
 We have no jurisdiction to interfere with state administrative processes relating to an on-land disposal site and its judicial review in state courts. In a prior opinion we said:
 We believe some additional directions will be helpful to the district court in fashioning its decree in conformity with this opinion. The matters of furnishing Reserve with an on-land disposal site and issuing necessary permits relevant to the air and water discharges are governed by provisions of Minnesota state law. See Minn.Stat.Ann. §§ 116.07(4a) and 115.05 (Supp.1974). The resolution of the controversy over an on-land disposal site does not fall within the jurisdiction of the federal courts. Moreover, it follows that neither Michigan, Wisconsin, nor the environmental groups have any right of participation in that decision-making process except as may be otherwise provided by Minnesota law. (514 F.2d 539-40 (footnotes omitted).)
 Obviously, we imply no views relating to the merits of matters before any Minnesota court.
 
 
 [4]
 The specific permit provision here in question reads:
 (d) Such tailings shall not be discharged so as to result in any material clouding or discoloration of the water at the surface outside of said zone except during such time as turbidity from natural conditions in the adjacent portions of the lake outside of said zone may be caused by storms, nor shall such tailings be discharged so as to result in any material adverse effects on fish life or public water supplies or in any other material unlawful pollution of the waters of the lake or in any material interference with navigation or in any public nuisance outside of said zone.