UNITED STATES of America et al.,
Plaintiffs and Plaintiffs-Intervenors,

v.

RESERVE MINING COMPANY et al.,
Defendants and
Defendants-Intervenors.

No. 5-72-Civ-19.

United States District Court,
D. Minnesota,
Fifth Division.

May 26, 1977.

John Varnum, Washington, D.C., for plaintiff United States.

Michael Ferring, St. Paul, Minn., for the United States Army Corps of Engineers.

Byron E. Starns, Philip J. Olfelt, C. Paul Faraci and James M. Schoessler, St. Paul, Minn., for plaintiff State of Minnesota.

William P. Dineen, Robert Asleson, Daniel C. Berglund, Duluth, Minn., for plaintiff City of Duluth.

Howard Vogel, Minneapolis, Minn., for plaintiffs Minnesota Environmental Law Institute, Inc., Northern Environmental Council, Save Lake Superior Ass'n, Michigan Environmental Student Confederation, Inc., and Environmental Defense Fund, Inc.

Edward T. Fride, Duluth, Minn., and Maclay R. Hyde, Minneapolis, Minn., for defendant Reserve Mining Co.

William T. Egan, Minneapolis, Minn., for defendant Republic Steel Co.

John B. Gordon and G. Alan Cunningham, Minneapolis, Minn., for defendant Armco Steel Co.

Wayne G. Johnson, Silver Bay, Minn., for defendants Village of Beaver Bay, Silver Bay Chamber of Commerce, Village of Silver Bay, Town of Beaver Bay, and Lax Lake Property Owners Ass'n.

DEVITT, Chief Judge.

Defendants seek modification of this court's order enjoining Reserve's discharges of taconite tailings into Lake Superior effective July 7, 1977. That order was premised on the apparent failure of Minnesota and Reserve to agree to a suitable on-land disposal site. However, the location of the on-land disposal site, a controversy which has plagued this litigation for more than three years, now has been determined by order of the Minnesota Supreme Court. All parties have apparently accepted that determination and defendants are prepared to build the disposal facility at Milepost 7.

In its order upholding this injunction, the Court of Appeals recognized that resolution

of the on-land site controversy properly may call for a modification of the closure order. *United States v. Reserve Mining Co.*, 543 F.2d 1210, 1212 (8th Cir. 1976). It is noted that the potential health hazard occasioned to North Shore residents by drinking water from the lake has been substantially lessened by the recent construction of a permanent water filtration plant in Duluth.

The Minnesota Court directed state agencies "to issue forthwith" all necessary permits for which Reserve has applied subject to all conditions demanded by the Minnesota Pollution Control Agency and the Commissioner of Natural Resources. Reserve has stated its acceptance of these conditions. Defendants represent that if construction can begin by August 1, 1977, Reserve's discharges into Lake Superior will be completely eliminated by April 15, 1980. Plans, blueprints, and other engineering data detail this proposal.

The United States, Minnesota, Michigan and Wisconsin do not disagree that Reserve should be afforded a reasonable time to build the on-land disposal facility.

This motion was heard May 26, 1977. At that hearing, the Minnesota Attorney General represented that state agencies will issue permits necessary for initial construction by June 1, 1977 and all permits necessary for the on-land disposal facility at Milepost 7 by August 1. Counsel for the United States indicated that no federal permits are necessary for the initial construction work and that all necessary federal permits will be issued by the Corps of Engineers shortly after July 1, 1977. Defendants represented that preliminary construction can begin on June 1 and that full construction activity according to plan can begin by at least August 1, 1977.

On the files and records,

IT IS ORDERED that the court's order of July 7, 1976 directing termination of lake discharges on July 7, 1977 is STAYED until further order of the court, PROVIDED defendants start construction on or before June 1, 1977 and utilize every reasonable effort to expedite construction in accordance with their submitted plan and subject to all laws and permit terms, and effect complete termination of taconite discharges into Lake Superior on or before April 15, 1980.

Agencies of the federal and state governments are directed to give expeditious consideration to Reserve's application for permits in accordance with the representations of their counsel at the hearing. The fact that all permits which eventually may be necessary for final construction have not been issued by August 1, 1977 shall not be considered a justifiable excuse for failure to carry on construction according to plan.

Reserve is directed to provide plaintiffs, by June 21, 1977, the critical path schedules and all other information necessary to establish a detailed schedule of planning, design, and construction of the Milepost 7 on-land disposal project, including but not limited to:

a. Basin, dams and diversions
b. Pipelines
c. Processing plant modifications
d. Delta stabilization program, and
e. Pelletizing dust control program

Reserve is directed to provide monthly construction progress reports to the parties and to file quarterly construction progress reports beginning July 1, 1977 with the clerk of court in St. Paul. Each quarterly report shall reflect what proportion of the total construction has been effected during that period and what proportion of the total construction has been effected to date. Reserve shall permit authorized representatives of plaintiffs access to the construction area, construction records and testing activities.

United States and Minnesota are directed to continuously monitor construction progress in light of Reserve's construction plan, the critical path schedules and other information furnished in response to this order, and if it reasonably appears that construction is unlikely to be completed in time to effect complete termination of taconite discharges into Lake Superior by April 15, 1980, they shall advise the court and

move for relief. Defendants shall reimburse United States and Minnesota for the reasonable costs incurred by them in performance of this duty beyond those incurred by routine compliance monitoring.

The court retains jurisdiction to impose sanctions or reinstate the injunction, as the facts may require, in response to an appropriate motion.