**RESERVE MINING COMPANY, Respondent,**

v.

**STATE of Minnesota and Arthur C. Roemer, Commissioner of Revenue, Appellants.**

**No. 50957.**

Supreme Court of Minnesota.

Sept. 25, 1981.

Warren Spannaus, Atty. Gen., C. H. Luther, Deputy Atty. Gen., and Paul R. Kempainen, Sp. Asst. Atty. Gen., Dept. of Revenue, St. Paul, for appellants.

Hanft, Fride, O'Brien & Harries, Edward T. Fride, Raymond L. Erickson and Paul J. Lokken, Duluth, for respondent.

WAHL, Justice.

The State of Minnesota appeals a judgment of the Lake County District Court holding the Minnesota taconite tailings tax, Minn.Stat. § 298.24, subd. 2 (1980) unconstitutional as a bill of attainder in violation of U.S.Const. art. I, § 10, cl. 1 and Minn.Const. art. I, § 11, as a violation of the separation of powers doctrine under U.S.Const. art. I, § 1, art. II and art. III, § 1, and Minn.Const. art. III, and as an impairment of contract barred by U.S.Const. art. I, § 10, cl. 1, and Minn.Const. art. I, § 11. Additionally, the district court found the tailings tax to be an excise tax subject to the limitations on the taxation of taconite production imposed by Minn.Stat. § 298.40, subd. 1 (1980) and by Minn.Const. art. X, § 6. We affirm in part and reverse in part.

The Minnesota legislature in 1963 and the people of the State of Minnesota in 1964 approved legislation which became known as the taconite amendment, art. X, § 6 of the Minnesota Constitution. Reserve Mining Company (Reserve) proceeded under the amendment to construct taconite facilities in the state with a capital investment exceeding $350 million and over 3,300 employees. Reserve's discharge of taconite tailings into Lake Superior has been the subject of extensive litigation in federal and state courts.

The instant case involves a challenge to the taconite tailings tax enacted by the Minnesota legislature, effective after June 30, 1977. Act of June 2, 1977, ch. 423, art. X, § 32, 1977 Minn.Laws 1009, 1081. On the effective date of the act, Reserve brought this action for declaratory judgment. Reserve sought a declaration that the tailings tax was unconstitutional, as well as a declaration that the tailings tax was subject to the limitations of the taconite amendment. The text of Minn.Stat. § 298.24, subd. 2 (1980), which imposes the tax reads:

There is hereby imposed upon taconite and iron sulphides, and upon the mining and quarrying thereof, and upon the production of iron ore concentrate therefrom, and upon the tailings so produced an additional tax of 10 cents per 2,000 pounds of tailings produced. For the purposes of this subdivision tailings mean the solid and liquid waste materials resulting from the beneficiation process.

The tax imposed by this subdivision shall only apply to those tailings from a taconite facility which are not deposited on land in accordance with permits issued by the pollution control agency and the department of natural resources.

The proceeds of the tax imposed by this subdivision shall be deposited in the general fund of the state.

Reserve has been the only mining company to incur tax liability under its provisions because it is the only company that did not deposit its tailings on land in accord with state permits. Reserve paid a tailings tax

of $89,235.78 for 1977 and $1,958,120 for 1978. The tax payment for 1979 has been postponed by stipulation, pending the outcome of this appeal.

The issues to be considered on appeal are:

A. Is the taconite tailings tax unconstitutional

1. as a bill of attainder?
2. as a violation of the separations of powers doctrine?
3. as an impairment of contract?

B. Is the tailings tax subject to the limitation on taxation under Minn.Stat. § 298.-40, and, if so, did the combined taxes subject to that limitation exceed that limitation?

The scope of our review of the decision below is clear. We will not disturb the findings of the trial court unless they are clearly erroneous, either without substantial evidentiary support or induced by an erroneous view of the law. *Pettibone Minnesota Corp. v. Castle*, 311 Minn. 513, 247 N.W.2d 52 (1976).

A. *Constitutionality of the Taconite Tailings Tax Statute.*

Reserve challenges the constitutionality of the tailings tax statute on the ground that it is a bill of attainder, a violation of the separation of powers doctrine and an impairment of contract.[1]

1. *Bill of Attainder*:

The trial court found that the taconite tailings tax statute was a bill of attainder in violation of U.S.Const. art. I, § 10, cl. 1 and Minn.Const. art. I, § 11 because it sought to punish Reserve for depositing tailings in Lake Superior and to recoup the state's litigation costs from several law suits and expenses for filtration of Lake Superior water. A bill of attainder, as defined in *Nixon v. Administrator of General Services*, 433 U.S. 425, 468, 97 S.Ct. 2777, 2802, 53 L.Ed.2d 867 (1977), is "[a] law that legislatively determines guilt and inflicts

punishment upon an identifiable individual without provision of the protections of a judicial trial." A statute is a bill of attainder when it specifically singles out an identifiable group or individual for the infliction of punishment by other than judicial authority. The historical experience with laws similar to the statute in question, the function of the statute in imposing burdens without reasonable and appropriate legislative purpose, and the legislative intent to punish are all indications of an attainted law. *Id.* at 469–78, 97 S.Ct. at 2803–2808. *See also United States v. Lovett*, 328 U.S. 303, 316, 66 S.Ct. 1073, 1079, 90 L.Ed. 1252 (1946). Other factors to be considered are the pronouncement of punishment by the legislature, *Nixon*, 433 U.S. at 476–80, 97 S.Ct. at 2807–2809, and the ability of the identifiable individual or group to escape from the punishment, *United States v. Brown*, 381 U.S. 437, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965).

Reserve argues that, because it is the only taxpayer affected by the statute and because the estimates of the amount of revenue that would be raised by the tax were based solely on Reserve's estimated production, the statute "names" it with specificity in violation of the bill of attainder clause. The state responds that, though Reserve is the only taxpayer now, the statute applies to all taconite companies which produce tailings which are not deposited either in any body of water or on land not in accord with state permits. The appellant in *Nixon* also argued that he was singled out for punitive treatment. The court rejected his argument, saying that naming Nixon by name in the Act does not automatically offend the clause. Furthermore, the court held that "appellant constituted a legitimate class of one, and this provides a basis for Congress' decision to proceed with dispatch with respect to his materials * *." *Nixon*, 433 U.S. at 472, 97 S.Ct. at 2805. Additionally, the *Nixon* court rejected the idea that a bill of attainder exists whenever

---

1. Reserve also argued that the taconite tailings tax was a violation of the equal protection and uniformity provisions of the state and federal

constitutions. The trial court did not rule, and appeal was not taken on these grounds.

a group or individual is compelled by law to bear burdens the individual or group dislikes. *Id.* at 470, 97 S.Ct. at 2803. *See also United States v. Lovett,* 328 U.S. at 324, 66 S.Ct. at 1083. The fact that Reserve is the only member of the class does not make the tailings tax statute a bill of attainder. The statute could logically be applied to other tailings producers not operating in compliance with Minn.Stat. § 298.24, subd. 2.

Reserve argues that the legislature intended to punish it for disposing of taconite tailings in Lake Superior and to reimburse the state for monies expended in litigation over such disposal. In an attempt to prove the legislature's intent in passing the tailings tax law, Reserve, over objection by the state, introduced evidence including: official documents, as well as memoranda; correspondence; transcripts of tape recordings of committee hearings; the testimony of Fred Cina, a former legislator; and the deposition testimony of Arthur Roemer, the State Commissioner of Taxation. The state argues that, except for the official records of the legislature, such evidence was inadmissible and that, even if admissible, it had no probative value. We have carefully limited, in our decisions, the admissibility of evidence of legislative intent. *Starkweather v. Blair,* 245 Minn. 371, 71 N.W.2d 869 (1955). Even when it has been necessary to ascertain legislative intent, Minn.Stat. § 645.16 (1980), we have kept in mind that there is an obvious difference between examining the journals of the legislature in seeking to determine legislative intent, i. e., what the legislature intended by the language it used, and in seeking to determine the motives of the legislature in passing an act. As long as the legislature does not transcend the limitations placed upon it by the constitution, its motives in passing legislation are not the subject of proper judicial inquiry. *Starkweather,* 245 Minn. at 380, 71 N.W.2d at 876.

The Supreme Court of the United States has permitted inquiry into legislative motive for the limited purpose of determining "whether the statutes under review were punitive in nature." *United States v. O'Brien,* 391 U.S. 367, 383–84, n. 30, 88 S.Ct. 1673, 1682–1683, 20 L.Ed.2d 672 (1968). That court has found certain evidence to be appropriate in establishing legislative intent generally. Official journals and reports of the legislature may be consulted. *Nixon,* 433 U.S. at 478, 97 S.Ct. at 2808; *Commissioner of Internal Revenue v. Acker,* 361 U.S. 87, 80 S.Ct. 144, 4 L.Ed.2d 127 (1959). The sponsors of a bill, the floor manager, committee chairmen, or other members of the legislature who are knowledgeable may be called as witnesses, but caution should be exercised in calling opponents to the bill, since they tend to overstate its reach in their zeal to defeat it. *NLRB v. Fruit and Vegetable Packers Local 760,* 377 U.S. 58, 66, 84 S.Ct. 1063, 1068, 12 L.Ed.2d 129 (1963). One or two witnesses are generally held insufficient to establish legislative intent, since no one person could adequately represent the varying viewpoints that are expressed in the legislative process. *O'Brien,* 391 U.S. at 383–84, 88 S.Ct. at 1682–1683.

Even if we were to apply all of the above rules, the evidence in this case falls far short of proof of improper legislative motive and intent. The journal record of the legislative session, debates, and committee hearings is severely edited. Cina, the former legislator who testified, was a member of the legislature when the 1963 taconite amendment was passed but was not a member when the tailings tax statute was enacted. Thus, he could speak with authority about the passage of the taconite amendment but was not qualified, either as an expert or as a legislator involved in the legislative process, to speak about the intent of the legislature with regard to the tailings tax. Similarly, Tax Commissioner Roemer was not a legislator when the tailings tax statute was enacted. He could speak as an expert about the operations of his department and its involvement in the legislative process, but he could not testify authoritatively about the intent of the legislature since he was not a member of the legislature. The entries in the official legislative journals and in the minutes of the

committee hearings contain no statement of purpose, nor do they contain statements of individual legislators as to the purpose of the law. The brief statements of the bills before the House and Senate contained references only to "establishing a taconite area environmental protection fund" and "imposing a tailings tax." *Cf. Bricelyn School District No. 132 v. Board of County Commissioners of Faribault County*, 238 Minn. 53, 55 N.W.2d 597 (1952). (A preamble to a statute can be considered to ascertain legislative intent.) The tax imposed was added among several other provisions of taconite taxation and would have subjected any of several taconite producers to tax liability had they chosen to dispose of tailings not on land in accord with state permits. Considering only the authoritative evidence presented at trial on the issue of legislative intent, no motive or intent to punish Reserve is apparent.

To decide whether the law did effectively punish Reserve, we apply the functional test used in *Nixon*. That test is

a functional test of the existence of punishment, analyzing whether the law under challenge, viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes. [Citations omitted.] Where such legitimate legislative purposes do not appear, it is reasonable to conclude that punishment of individuals disadvantaged by the enactment was the purpose of the decisionmakers.

433 U.S. at 475–76, 97 S.Ct. at 2806–2807. Under Minn.Stat. 298.24, subd. 2, only Reserve was taxed, because it was the only taconite producer which did not deposit tailings on land in compliance with state permits. The statute imposed a tax on one phase of taconite production as a means of raising revenue and as an incentive to produce in a certain manner. Many taxes are incentives or inducements, and this tax could be so interpreted. It is no more of a punishment than are any of the other production taxes imposed on taconite producers. Furthermore, Reserve could escape from the taxation by depositing the tailings

in a different manner, as other taconite producers customarily did.

We hold that the taconite tailings tax statute does not violate the constitutional prohibitions against bills of attainder since the tax could apply to a legitimate class of tailings producers, there was no intent to punish, and no actual punishment was imposed.

2. *Separation of Powers Doctrine* :

■ The trial court found that the taconite tailings tax statute violated the separation of powers provision of the United States Constitution, art. I, § 1, art. II and art. III, § 1, and the Minnesota Constitution, art. III, because the legislative act operated to charge Reserve for the state's attorney's fees in the environmental suits and the cost of the permanent Lake Superior water filtration facilities after a judicial determination that Reserve could not be so charged. *United States v. Reserve Mining Co.*, 412 F.Supp. 705, 713, (D.Minn.1976), aff'd, 543 F.2d 1210, 1214 (8th Cir. 1976). The state argues on appeal that the statute on its face evinces no such purpose and that the legislature is inherently empowered to tax for the general welfare under Minn. Const. art. X, § 1.

There is no rule or test which governs disputes on the constitutional doctrine of separation of powers. The Supreme Court has rejected the argument that the activities of each branch of government must be limited so as to prevent an overlap of the functions. *Nixon*, 433 U.S. at 443, 97 S.Ct. at 2790; *Buckley v. Valeo*, 424 U.S. 1, 121, 96 S.Ct. 612, 683, 46 L.Ed.2d 659 (1976). No purpose is apparent on the face of the statute except to impose a tax on the tailings producers who do not operate in compliance with the statute's provisions. There is no evidence that the legislature has usurped any judicial function or attempted to grant or deny attorney's fees in any of the lawsuits between the parties in contravention of court order.

Reserve claims it is being charged for the permanent filtration for Lake Superior

water[2] because Minn.Stat. § 298.24, subd. 2 provides in the third paragraph: "The proceeds of the tax imposed by this subdivision shall be deposited in the general fund of the state." The general fund is used to provide for the public welfare in many ways. One of the provisions made by the legislature from the general fund is for aid to local governments in establishing permanent water filtration facilities. Minn.Stat. § 298.244, subd. 2 (1980). Of the $4,250,000 appropriated from the general fund, the legislature designated proceeds of the tailings tax as a source of repayment of $1,750,000. *Id.* at subd. 2(g). While Reserve's tax payments may go to repay the general fund, it does not preclude other taconite companies from being obligated to pay the tailings tax if they fall under the statute, nor would the state be relieved of the obligation to pay for the permanent water filtration facilities were the taconite tax not present. Furthermore, nothing in either the tailings tax or the water filtration appropriation indicates that the money is to be used solely for Lake Superior facilities. The appropriation is to benefit any community in the state which needs permanent water filtration. No obvious attempt to seize power rightly belonging to the judiciary is evident in the legislative enactment. We find no violation of the constitutional doctrine of separation of powers.

### 3. *Impairment of Contract* :

■ Reserve argued below that permits issued by the state allowing disposal of taconite tailings in Lake Superior and the taconite amendment itself were contracts between the state and Reserve which were impaired by the enactment of the taconite tailings tax statute in violation of the United States Constitution, art. I, § 10, cl. 1, and the Minnesota Constitution, art. I, § 11. The trial court found as fact that Reserve expended large sums of money in reliance on permits issued. A contract argument could be made that Reserve relied, to its detriment, on the permits and that both

parties acted as if a contract existed. But the permits and Reserve's violation of the permit provisions have been fully litigated in state and federal courts. The federal court approved the fines imposed by the state and allowed discharge to continue only under the court orders, not under permits. *United States v. Reserve Mining Co.,* 543 F.2d 1210; *United States v. Reserve Mining Co.,* 431 F.Supp. 1248 (D.Minn.1977). Reserve has no basis to maintain that a contract exists or has existed at any time since the imposition of the taconite tailings tax. Furthermore, the permits did not include express contractual language granting a tax exemption, which is required to invoke the protection of the contract clause. *Erie Railroad v. Pennsylvania,* 88 U.S. (21 Wall.) 492, 498–99, 22 L.Ed. 595 (1874). Thus the arguments that the tailings tax statute impairs a contract based on the permits fails, since a contract must exist before it can be impaired.

■ The trial court also found that the taconite amendment itself constituted a contract between Reserve and the state and that the tailings tax impaired that contract. The text of the taconite amendment reads:

Laws of Minnesota 1963, Chapter 81, relating to the taxation of taconite and semi-taconite, and facilities for the mining, production and beneficiation thereof shall not be repealed, modified or amended, nor shall any laws in conflict therewith be valid until November 4, 1989. Laws may be enacted fixing or limiting for a period not extending beyond the year 1990, the tax to be imposed on persons engaged in (1) the mining, production or beneficiation of copper, (2) the mining, production or beneficiation of copper-nickel, or (3) the mining, production or beneficiation of nickel. Taxes imposed on the mining or quarrying of taconite or semi-taconite and on the production of iron ore concentrates therefrom, which are in lieu of a tax on real or personal property, shall not be considered to be occupation, royalty, or excise taxes within the meaning of this amendment.

---

2. Reserve was required by the federal district court to pay only for Duluth's temporary water

filtration. *United States v. Reserve Mining Co.,* 412 F.Supp. 705, 713 (D.Minn.1976).

Minn.Const. art. X, § 6. The amendment incorporates the limits on taxation in Minn. Stat. § 298.40. In a basic contract analysis, the amendment meets the criteria necessary to create a viable contract. The passage of the bill and approval by the citizens of Minnesota constituted the offer. The acceptance was the action of Reserve to build facilities, create jobs and continue the production of taconite. Consideration existed on both sides: The state received the revenues, a stronger economy and jobs for its citizens, while Reserve received a favorable tax status. Both sides have performed to date. When the people of this state make a bargain, mining companies as well as the least of us have a right to expect that the bargain will be kept. We affirm the trial court's finding that the taconite amendment is a contract between Reserve and the State of Minnesota.

■ Was the contract, as set forth in the taconite amendment, impaired by the subsequent enactment of the tailings tax statute? Reserve would have us interpret the taconite amendment to mean that the legislature cannot impose any other taxes on taconite companies. We do not agree. In enacting the taconite amendment, the state did not contract away the legislature's right to tax. It is precluded from doing so.[3] The amendment only accorded taconite producers favorable tax status by making taxation of taconite production subject to a statutory limit. The enactment of the tailings tax statute did not, in and of itself, constitute an impairment of the contract created between Reserve and the state, and Reserve has not shown that an impairment otherwise exists.

Reserve has not demonstrated beyond a reasonable doubt that the tailings tax statute violates any constitutional provision, as we have held that it must to sustain a constitutional challenge. *Head v. Special School District No. 1*, 288 Minn. 496, 505, 182 N.W.2d 887, 893 (1980), *cert. denied*, 404 U.S. 886, 92 S.Ct. 196, 30 L.Ed.2d 168 (1971).

We reverse the decision of the trial court holding Minn.Stat. § 298.24, subd. 2 to be unconstitutional.

B. *Limitation on Taxation* :

We must now determine whether the tailings tax is subject to the limitation on taxation under Minn.Stat. § 298.40 (1980).

The taconite amendment incorporates the limitation on taxation of taconite production in Minn.Stat. § 298.40. The applicable portion of the statute reads:

TACONITE AND SEMI–TACONITE, LIMITATIONS ON TAXATION.

Subdivision 1. The combined occupation, royalty, and excise taxes imposed upon or required to be paid with respect to the mining, production, or beneficiation of taconite or semi-taconite by any person or corporation engaged in such mining, production, or beneficiation, shall not be increased so as to exceed the greater of (a) the amount which would be payable if such taxes were computed under the laws in existence as of July 1, 1963, or (b) the amount which would be payable if such person or corporation were taxed with respect to such mining, production, or beneficiation under the income, franchise, and excise tax laws generally applicable to manufacturing corporations transacting business within the state, as such laws may be enacted or amended from time to time * * *.

Subd. 2. Taxes imposed upon the mining or quarrying of taconite or semi-taconite and upon the production of iron ore concentrates therefrom, which are in lieu of a tax on real or personal property, shall not be considered to be occupation, royalty, or excise taxes within the meaning of this section.

Subdivision 2 operates to exempt from the taxation limit any taxes which are in lieu of property taxes. The tailings tax statute, Minn.Stat. § 298.24, subd. 2, imposes an additional tax of 10 cents on each short ton of taconite tailings not deposited on land in

---

**3.** "The power of taxation shall never be surrendered, suspended or contracted away." Minn.

Const. art. X, § 1.

accordance with a state permit. The question to be determined is whether the taconite tailings tax is an "in lieu" tax or an excise tax, as the court found it to be. As an excise tax, the tailings tax would be added to respondent's occupation, royalty, and other excise tax liabilities, the sum of which is subject to the provisions of the limitation statute. The trial court held that any tailings taxes imposed which would cause the combined taxes subject to the limitation to exceed that limitation were unlawful. The state argues that the tailings tax is an "in lieu" tax and, as such, exempt from the provisions of the limitations act. Minn.Stat. § 298.25 (1980) provides that the taxes imposed under section 298.24 shall be in addition to occupation and royalty taxes but that "such taxes shall be in lieu of all other taxes upon" the taconite, machines, buildings, and land "occupied by, or used in connection with, such mining, quarrying or production facilities."

■■■ Though the legislature characterized the taconite tailings tax as an "in lieu" tax, we must look beyond the form of the tax to its substance. To be exempt from the limitations on taxation imposed by Minn.Stat. § 298.40, subd. 1, and the taconite amendment, the tailings tax must be a valid substitute for a tax on real or personal property. There is, as the state points out, no requirement that a property tax be related to the value of the property, *Contos v. Herbst*, 278 N.W.2d 732, 739–40 (Minn. 1979), if the tax is "uniform upon the same class of subjects," Minn.Const. art. X, § 1, but that tax should bear a relationship to the tax base as property rather than as an activity. The more a tax appears to be a regulatory measure, or a tax incentive to encourage or discourage particular behavior, or a tax based on the type of activity conducted, the more it fits the definition of an excise tax rather than an *ad valorem* property-based tax. It can be argued, and the state does argue, that a tax on taconite tailings dumped in the water is a valid substitution of a property tax because the land of the taxpayer will be more valuable as a result of not having taconite tailings dumped on the land. It is clear, however, that the statute was enacted not primarily as a revenue-raising measure, though it does raise revenue, but as a method to control an activity, *i. e.*, the disposition of taconite tailings. Once all taconite producers are induced or persuaded to dispose of those tailings "on land in accordance with [state] permits," the purpose of the statute is achieved though the revenue ceases. Because the taconite tailings tax functions as an excise tax, we hold it to be an excise tax subject to the tax limitations of the taconite amendment. This action being for declaratory judgment, there has been no proof that the tailings taxes paid or owing by Reserve have exceeded those limitations.

Affirmed in part and reversed in part.

SHERAN, C. J., took no part in the consideration or decision of this case.