PICKANDS MATHER & CO., as Managing Agent for Erie Mining Company, Respondent,

v.

The COMMISSIONER OF REVENUE, Relator (C5–82–94),

and

Range Municipalities and Civil Association, Relator (C7–82–95).

Nos. C5–82–94, C7–82–95.

Supreme Court of Minnesota.

May 13, 1983.

Rehearing Denied Aug. 16, 1983.

Hubert Humphrey, III, Atty. Gen., Thomas Overton, Sp. Asst., Dept. of Revenue, St. Paul, Michael Sullivan, Sp. Counsel, Minneapolis, for Com'r of Revenue.

Fred Cina, Aurora, for relator Range Municipalities and Civic Assn.

Hanft, Fride, O'Brien & Harries and Edward Fride, Paul Lokken and Fred A. Dudderar, Jr., Duluth, for respondent.

SIMONETT, Justice.

This is an appeal by the Commissioner of Revenue from a decision of the Tax Court holding that the aggregate occupation, royalty and excise tax assessed against a taconite mining company for the years 1971 through 1974 exceeded the limits imposed by Minn.Stat. § 298.40 (1982) and further holding that an additional production tax imposed under Minn.Stat. § 298.241 (1976) was a deductible item in calculating the occupation tax. We reverse the first holding and affirm the second.

Respondent is Pickands Mather & Co., managing agent for Erie Mining Company. Pickands Mather and other taconite producers each appealed to the Tax Court their aggregate occupation, royalty and excise taxes assessed for the years from 1971 to the present, alleging that the level of these taxes exceeds that permitted by Minn.Stat. § 298.40 (1982). The producers also appealed to the Tax Court the Commissioner's disallowance, in computing the occupation tax for 1971 through 1976, of a deduction for additional production taxes imposed on production in these years. The parties agreed to try Pickands Mather's appeals first for the years 1971–74 as representative of the other appeals on the legal questions raised. The Range Municipalities and Civic Association was permitted by stipulation to intervene. On November 25, 1981, the Tax Court issued findings of fact, conclusions of law and order for judgment, holding in favor of Pickands Mather in all respects. By certiorari, the Commissioner of Revenue, as relator, brings the Tax Court's decision to us for review.

Erie Mining Company is a Minnesota corporation which mines and produces taconite ore within Minnesota. It is owned by its shareholders in the following proportions: Bethlehem Steel Corporation (45%); Youngstown Sheet and Tube Co. (35%); Interlake, Inc. (10%); and Stelco Coal Co. (10%). For 1974 Erie was a "cost company" within the meaning of Rev.Rul. 56–542 (since revoked by Rev.Rul. 77–1) of the Internal Revenue Service. Under the terms of a letter agreement, required by the IRS for an entity to operate as a cost company, these shareholders provide in proportion to their percentage of ownership all funds to Erie necessary for the mining company to operate. In exchange, the shareholders (all out-of-state manufacturers) receive the ore produced by Erie in proportion to their ownership interests. This cost company status is directly relevant only for federal income tax purposes, allowing Erie to operate as a nontaxable entity at the federal level.

The parties agree that all of Erie's taconite ore production facilities, property and employees are within Minnesota. Once produced, all of the ore is distributed to its shareholders out of state. Most of the ore is transported from Erie's plant over the

company railroad to Erie's loading facilities at Taconite Harbor, Minnesota. Three of the four shareholders contract with independent private ore carriers to transport the pellets to the shareholders' facilities in other states, while the fourth shareholder, Bethlehem Steel Corporation, uses both independent carriers and its own vessels to transport the taconite ore to its facilities. A minor portion of the ore pellets are transported out of state by common carrier. In all cases, however, the taconite ore is delivered to its shareholders at destinations outside of Minnesota.

The principal Minnesota taxes imposed upon the taconite industry are the occupation tax, Minn.Stat. § 298.01, subd. 2 (1982); royalty tax, section 299.01–.14 (1982); and production taxes, sections 298.24 (1982) and 298.241 (1976), and, until its repeal in 1978, the employer's excise tax, section 290.031. Taconite companies in Minnesota are exempt from state income tax, section 290.05, since the occupation tax is in lieu of an income tax. They are also exempt from property taxes, section 298.25, on their taconite operations, since the production taxes are in lieu of a property tax.

The occupation taxes assessed by the Commissioner for the taxable years 1971–74 are the taxes in dispute here. The issues posed primarily involve questions of statutory construction rather than an inquiry into the constitutionality of the pertinent statutes.

*The Limitation on the Occupation Tax*

With respect to occupation taxes, the issue is:

Whether Erie is entitled to apportionment in determining the statutory limitation of its occupation tax liability under Minn.Stat. § 298.40, subd. 1(b) (1982). And, if so, whether Erie is entitled to a refund of occupation tax overpayments, or, instead, a credit against occupation taxes otherwise payable under Minn.Stat. § 298.09, subd. 4 (1982).

■ The occupation tax is a tax imposed upon every person engaged in the business of mining or producing taconite in Minnesota. Section 298.01, subd. 2 (1982). The taconite is currently taxed at 15% of its value. The taxable value of the taconite is the ore's value at the place where the ore is brought to the earth's surface (mouth-of-the-mine value) and is determined by the Commissioner through administrative computations. Section 298.03 (1982). The Commissioner has historically determined the "mouth-of-the-mine" taxable value by beginning with the published Lake Erie sale price of the taconite and then working backwards, deducting the costs incurred after the ore has been brought to the surface, *i.e.*, beneficiation and transportation expenses, to determine the mouth-of-the-mine value. These deductions are called nonstatutory deductions.

Other deductions (such as the cost of extracting the ore) are made as provided by section 298.03 (1982) to arrive at the taxable value of the taconite. The effective tax rate is applied to the net figure after all deductions to determine a company's occupation tax liability. Although section 298.01, subd. 2 (1982), imposes a 15% tax rate, that rate is reduced by the labor credit to a current effective rate of 6.75% pursuant to section 298.02 (1982).

Further, the occupation tax liability is subject to the statutory limitation imposed under section 298.40 (1982). It is the construction of this statute that is central to this appeal. This statutory limitation is made secure by the Taconite Amendment to the Minnesota Constitution, art. 10, § 6, which prohibits any amendment, modification or repeal of section 298.40 for 25 years, *i.e.*, until 1989. The statutory limitation was enacted in 1963 and the constitutional amendment the following year. The Taconite Amendment was enacted to ensure investors in the taconite industry of fair tax treatment and thereby to encourage taconite development. Further, it appears that the legislature had in mind the contention of the mining industry that historically occupation taxes on the mining companies had exceeded income taxes on other kinds of corporations. In *Reserve Mining Co. v. State,* 310 N.W.2d 487, 494 (Minn.1981), we

noted that the Taconite Amendment created a contract between the taconite producers and the State of Minnesota and observed that "[w]hen the people of this state make a bargain, mining companies as well as the least of us have a right to expect that the bargain will be kept."

It is Erie's contention, adopted by the Tax Court, that the occupation tax assessed by the Commissioner for 1974 exceeds the tax ceiling imposed by section 298.40. Thus the questions for this court are what limitation does section 298.40 impose and has that limit been exceeded. Section 298.40 is set out in full below.[1] Essentially it provides that the occupation, royalty and excise taxes imposed on Erie shall not exceed the greater of two limitations:

Clause (a)—the amount Erie would pay if its tax were computed under the laws as they existed on July 1, 1963; or

Clause (b)—the amount Erie would pay if Erie were taxed under the income, franchise and excise tax laws generally applicable to manufacturing corporations transacting business within Minnesota, but subject to specified exceptions.

Since both parties concede that Erie's 1974 occupation, royalty and excise tax liability exceeds the clause (a) limitation, the question here is whether it exceeds the greater limitation set by clause (b). Clause (b), it is observed, does not freeze Erie's tax liability, but allows the limitation to be whatever the income, franchise and excise taxes generally applicable to manufacturing corporations may be from time to time, subject to specified exceptions. Since Erie does not pay income taxes, it is necessary under clause (b) to compute hypothetically what Erie's income taxes would be were it taxed like other corporations.

Erie's occupation tax liability for 1974 under the laws applicable in that year (if a deduction were permitted for the section 298.241 production tax, to be discussed later) would be $2,732,600. To this figure must be added Erie's royalty and excise tax liabilities for 1974 of $1,144,274, for a total occupation, excise and royalty tax liability of $3,876,874. If the Commissioner's interpretation of clause (b) is adopted, all of Erie's 1974 net income will be apportioned to Minnesota and the $3,876,874 actual figure computed for 1974 will not exceed the hypothetical tax. If, however, Erie's and the Tax Court's interpretation of clause (b)

1. Minn.Stat. § 298.40 (1982) provides:

Subdivision 1. The combined occupation, royalty, and excise taxes imposed upon or required to be paid with respect to the mining, production, or beneficiation of taconite or semi-taconite by any person or corporation engaged in such mining, production, or beneficiation, shall not be increased so as to exceed the greater of (a) the amount which would be payable if such taxes were computed under the laws in existence as of July 1, 1963, or (b) the amount which would be payable if such person or corporation were taxed with respect to such mining, production, or beneficiation under the income, franchise, and excise tax laws generally applicable to manufacturing corporations transacting business within the state, as such laws may be enacted or amended from time to time, except that for the purpose of the computation under this clause (b), (1) income shall be apportioned to Minnesota in the manner which may be otherwise specified by law; (2) operating losses shall be carried forward from one taxable year to another only to the extent which may be otherwise permitted by law; and (3) the market value of the taconite or semi-taconite, or the beneficiated product thereof, at the point where the beneficiation processes

within this state are completed may be treated by law as gross receipts for the purpose of determining gross income from the business of mining, producing, or beneficiating taconite or semi-taconite, provided that if such market value is so used, to the extent that federal income taxes are deductible in computing taxes of manufacturing corporations generally, deductions shall be computed and allowed as if such taxes had been computed, assessed, and paid under the federal income tax laws with the market value of the taconite or semi-taconite or the beneficiated product thereof constituting the gross receipts for the purpose of determining gross income from the business of mining, producing, or beneficiating taconite or semi-taconite.

Subd. 2. Taxes imposed upon the mining or quarrying of taconite or semi-taconite and upon the production of iron ore concentrates therefrom, which are in lieu of a tax on real or personal property, shall not be considered to be occupation, royalty, or excise taxes within the meaning of this section.

Subd. 3. For the purpose of this section "taconite" and "semi-taconite" shall have the meaning given to them by laws in existence at the time of the adoption of this section.

is followed, only 30% of Erie's net income would be apportioned to Minnesota and thus subject, hypothetically, to the 12% state corporate income tax imposed on manufacturing companies. This would result in a hypothetical total income, franchise and excise tax liability for Erie of $2,233,880, which is *less* than the occupation, royalty and excise taxes actually imposed. Under Erie's interpretation of clause (b), its actual occupation, royalty and excise tax liability for 1974 exceeds the statutory limitation by $1,642,994. If this latter contention is affirmed by this court, then Erie is entitled to either a credit or a refund in this amount.[2]

In other words, the issue is whether Erie is to be allowed income apportionment. Whether Erie has paid too much tax because its payment exceeds the hypothetical tax limitation of clause (b) depends on whether, in computing the hypothetical tax liability, the Commissioner must apportion Erie's income in the same manner that other Minnesota manufacturing companies apportion their income.

The formula for income apportionment for Minnesota manufacturing companies doing business partly within and partly without Minnesota is set out in Minn.Stat. §§ 290.19 and 290.17, subd. 2(4) (1982). If this apportionment formula is applicable to computing Erie's hypothetical income tax under the clause (b) limitation, then only 30% of Erie's hypothetical income is allocated to Minnesota, thus lowering the clause (b) limitation, thereby reducing the amount of occupation tax liability the Commissioner can assess against Erie. The Commissioner argues that the apportionment formula does not apply because: (1) an examination of clause (b) of section 298.40 shows that the apportionment formula of section 290.19 was not intended to apply to taconite producers; and (2) even if section 290.19 were intended to apply, an examination of section 290.19 shows that it is not applicable to Erie. The Tax Court rejected both of the Commissioner's contentions. We disagree with the Tax Court.

Minn.Stat. § 298.40, subd. 1, is, unfortunately, not free of ambiguity. Clause (b) provides in part that Erie's taxes are to be limited to:

the amount which would be payable if such person or corporation were taxed with respect to such mining, production, or beneficiation under the income, franchise, and excise tax laws generally applicable to manufacturing corporations transacting business within the state, as such laws may be enacted or amended from time to time * * *.

Clause (b), however, does not end there; if it did, we would have no problem. It goes on to provide:

except that for the purpose of the computation under this clause (b), (1) income shall be apportioned to Minnesota in the manner which may be otherwise specified by law * * *.

What is the significance of this proviso? Erie takes the position the phrase means that the apportionment formula of section 290.19 is to be used in computing a taconite company's hypothetical income; in other words, section 290.19 is, in effect, incorporated by reference into clause (b) of section 298.40. We do not agree.

■ Were the apportionment formula of section 290.19 meant to apply, the proviso would not have been inserted. The preceding language of clause (b) plainly says that taconite companies are to be taxed in the same manner as other manufacturing companies, and other manufacturing companies are subject to section 290.19. In other words, if the proviso were intended to include section 290.19, it is unnecessary and redundant. There has to be a different reason or purpose for the proviso. Erie suggests, alternatively, that the phrase at least means that section 290.19 should apply until such time as the legislature specifies a different apportionment formula. This alternative interpretation, however, is also

---

**2.** Throughout the balance of this opinion, we will, for simplicity, refer to Erie's occupation, royalty and excise tax liability as amounts of the occupation tax liability, since the royalty and excise taxes are not in dispute here.

subject to the infirmity that the phrase was unnecessary because section 290.19 would apply without it; if the legislature intended section 290.19 to apply until the legislature enacted a different statutory formula, we think the legislature would have said so directly, instead of making an exception to the apportionment formula of general application and stating that income would be apportioned in the manner "which may be otherwise specified by law."

We conclude the only reasonable interpretation of the proviso is that the taconite company's hypothetical income is to be apportioned otherwise than as specified in section 290.19. The proviso language must be read in conjunction with the language that precedes it. Clause (b) says that the taconite company's occupation tax shall not exceed its hypothetical income tax liability *except* that in computing the hypothetical tax limitation, income shall be apportioned in the manner which may be *otherwise* specified by law.[3] In other words, the legislature did not intend the apportionment formula generally applicable to manufacturing companies to be used, but it reserved the right to specify an apportionment formula at such time in the future as it deemed appropriate. Since the legislature has not seen fit for the years in question to enact a specific apportionment statute for the clause (b) computation, no apportionment is available to Erie.

■ The legislature may have excluded the apportionment formula of section 290.19 in the clause (b) computation because the formula is not applicable to a "cost company." At the time section 298.40 was enacted in 1963, the only taconite companies operating in this state were cost companies.[4] The apportionment formula of section 290.19 is available only to those corporations doing business partly within and partly without Minnesota. Minn.Stat. § 290.17, subd. 2(4) (1982), defines a trade or business located in Minnesota as doing business partly within and partly without the state "if tangible personal property is *sold* by such trade or business and delivered or shipped to a purchaser located outside the state of Minnesota." (Emphasis added.) Here, Erie has not sold its taconite pellets; it only transfers the pellets to its out-of-state shareholders in exchange for payment to Erie of its cost of producing the pellets. To characterize this transaction as a sale elevates form over substance. Erie itself has recognized that, in substance, Erie's stock-

---

**3.** A difference in income apportionment is not the only difference in treatment of taconite companies from other manufacturing companies in the computation of the clause (b) hypothetical income tax liability. Clause (b) also establishes imputed gross receipts from Minnesota operations rather than relying on income from actual sales, as well as an imputed deduction for federal income taxes rather than relying on actual federal taxes paid.

**4.** At such time as a for-profit taconite mining company might begin operations in the state, the legislature might then exercise its reservation under the proviso of clause (b) to enact a hypothetical statutory income apportionment formula. Richard Hastings, testifying as a representative of the taconite mining industry before the Senate Committee on Taxes and Tax Laws on March 14, 1963, when the bill for section 298.40 was being discussed, had this to say:

[The bill] provides that the tax shall not exceed the greater of either the present tax, the present occupation and royalty tax which I explained to you, or the tax would be computed under the state corporate income tax with three specific provisions in an attempt to meet what everybody recognized was, might pose some problems. The first one is the question of the apportionment of the income. Where the computation for income tax purposes of the income of a taconite or semi-taconite company. Where you run into trouble there is two-fold. In the first place some of these companies are so-called cost companies. They operate for steel plants and they are not in business in the sense that Three M is where they are making a product and selling it on the market. It would be our hope that other companies would be attracted to Minnesota that might not be in precisely the same position. You also run into a problem of actually, for instance, where a sale of a product of this type takes place, which, as you all know, under the apportionment formula could drastically alter this computation so for that reason *it was left in this measure, to the judgment of the legislature to determine how that apportionment should be made when the legislature sees fit to do so.*

(Emphasis added.)

holders are joint venturers, using Erie as a vehicle for their enterprise. In 1952, when Erie and its shareholders applied for a closing agreement with the Internal Revenue Service for Erie to be treated as a cost company for federal income tax purposes, Erie stated in the application that, "[i]f these stockholders are treated as joint venturers, *which is in substance what they are,* the Government will be giving recognition to a common and traditional method of doing business in the iron ore industry." (Emphasis added.) In other words, though a separate corporate entity, Erie is really a conduit by which parties to a joint venture acquire taconite pellets at cost. Thus, we have great difficulty in characterizing Erie as a Minnesota business that sells its products to out-of-state purchasers.

Each shareholder's payment to Erie appears to be more like a contribution to capital insofar as money is transferred to Erie to enable it to produce the pellets. The payments are not simply made directly in exchange for pellets. In this context, we conclude Erie does not qualify as a Minnesota business that sells its product to out-of-state purchasers, and, consequently, Erie would be precluded from apportioning its income under section 290.19.

■ Erie argues that disallowing income apportionment under section 290.19 defeats the purpose of the Taconite Amendment to keep the occupation taxes of a taconite company on a parity with the income taxes paid by other corporations. This begs the question. The constitutional amendment provides that section 298.40 "shall not be repealed, modified or amended for 25 years." The issue here, however, is not repeal, modification or amendment, but

simply what the statute says. The fact is that section 298.40 does not say that taconite producers are to be taxed in the same manner as other manufacturing companies generally, but, rather, they are to be taxed in the same manner *except* that the income apportionment formula used by other manufacturing companies does not apply.[5]

■ Finally, both Erie and the Tax Court state that clause (b) compels apportionment because the proviso says that income "shall" be apportioned. But this mandatory "shall" advances the analysis nowhere, since it sheds no light on the rest of clause (b), especially the part we here italicize, namely, that "income shall be apportioned to Minnesota in the manner *which may be otherwise specified by law.*"

We hold, therefore, that the Tax Court erred in construing the aggregate occupation, royalty and excise tax ceiling under clause (b) of section 298.40 by allowing use of the apportionment formula under section 290.19 so as to lower the hypothetical income tax liability and thereby also lowering the ceiling on Erie's aggregate tax liability. We hold that clause (b) of section 298.40 is construed to read that a taconite producer's aggregate tax shall not exceed the amount such producer would pay if taxed under the income, franchise and excise tax laws generally applicable to manufacturing corporations transacting business in Minnesota, except that for the purpose of the computation of this hypothetical tax, income shall be apportioned to Minnesota as may be specified by the legislature otherwise than by sections 290.17 and 290.19.

Since apportionment of Erie's hypothetical income is not allowed by any statute, all

---

5. In 1980, while this litigation was pending before the Tax Court, the legislature enacted Minn.Stat. § 298.401 (1982), 1980 Minn.Laws, ch. 607, art. 7, § 10, which provides:

All imputed income determined pursuant to section 298.40, subdivision 1, clause (b) is and shall be apportioned to Minnesota.

The legislature noted that "[s]ection 298.401 is a restatement of the intent of section 298.40, as originally enacted." The Commissioner argues that this enactment by the 1980 legislature explaining what the 1963 legislature intended

should be given great weight in construing section 298.40. So stated, we think the argument is self-defeating, and we need not reach Erie's arguments that the 1980 legislation is an unconstitutional impairment of contract or that it violates the doctrine of separation of powers. Since the Taconite Amendment and section 298.40 created a contract between the state and Erie, the attempt by one party to the contract unilaterally and 17 years later to add words to that contract is of no probative value.

162

of Erie's income is deemed allocated within Minnesota, with the result that Erie's aggregate tax liability, as assessed by the Commissioner, does not exceed the limitation imposed by clause (b) of section 298.40.

### The Deductibility of the § 298.241 Production Tax

■ Production taxes paid by a taconite mining company are not subject to the tax liability limitation of section 298.40 and the Taconite Amendment. Minn.Stat. § 298.40, subd. 2 (1982). Production taxes may, however, be treated as a deduction in determining a mining company's occupation tax. Minn.Stat. § 298.03(6) (1982).

The issue here is whether the additional production taxes imposed under Minn.Stat. § 298.241 (1976) upon Erie for the years 1971 through 1974 were properly deductible in computing the taxable value of ore for the purpose of determining Erie's occupation tax liability. On this issue we agree with the Tax Court that the deduction was properly taken by Erie and affirm.

In computing the occupation tax, Minn. Stat. § 298.03 (1982) allows the mining company to take certain statutory deductions from the mouth-of-the-mine value as part of the process of determining the valuation for the purpose of the occupation tax. Clause (6) of this statute allows as a deduction:

> (6) In the case of taconite, semi-taconite and iron sulphide operations, *the tax payable under section 298.24,* but not exceeding 25 cents per taxable ton, and that payable under section 298.35, on the concentrates produced in said year and any taxes paid under Laws 1955, Chapters 391, 429, 514, 565 or 540, *or any other law imposing on such taconite operations a specific tax for school or other governmental purposes.*

(Emphasis added.)

Prior to 1971 the only statute levying production taxes on taconite was section 298.24. That statute imposed a production tax base rate of 11.5 cents per ton subject to escalation by reference to the index for wholesale prices for all commodities. This

tax was and remains an enumerated statutory deduction which may be taken from the mouth-of-the-mine value of taconite to arrive at the net income which will be subject to the occupation tax.

In 1971 the legislature enacted section 298.241, which imposed a tax "in addition to the tax imposed under section 298.24, subdivision 1" upon taconite, the mining and quarrying thereof, and the iron ore concentrate produced therefrom. 1971 Minn.Laws Ex.Sess. ch. 31, art. 30, § 7. The tax imposed under section 298.24 was gradually increased over a period of specified years, ranging from 4 cents per ton during 1971 to 14 cents per ton during 1979. Section 298.241 was repealed in 1977. *See* 1977 Minn. Laws ch. 423, art. 10, § 31.

The issue here is whether the "extra" production tax imposed under section 298.241 is deductible under section 298.03 in determining the amount of occupation tax to be paid, as is the production tax under section 298.24. The problem here is that section 298.03(6) expressly allows a deduction for "the tax payable under section 298.24," but says nothing about deducting the tax payable under section 298.241, even though both sections refer to the same kind of production taxes. The Tax Court held that the taxes imposed by sections 298.24 and 298.241 "are identical in substance" and that "similar legislative intent, policy and purpose underlies both." The Tax Court further found that the section 298.241 production tax is a "specific tax for governmental purposes within the meaning of Minnesota Statutes 298.03(6)." Finally, the court concluded that the Commissioner's determination in 1971, contemporaneous with the enactment of section 298.241, that this tax was deductible under section 298.03(6), and its allowance of this deduction for 3 years before reversing its position, is persuasive evidence of the legislature's intent that the taxes payable under section 298.241 are deductible.

We agree that the section 298.241 tax is identical in substance to the section 298.24 tax, and we agree the legislature probably intended both taxes to receive equal treat-

ment, but this is not enough to allow deductibility where the statute expressly mentions the section 298.24 deduction but says nothing about a section 298.241 deduction. Neither do we think the Commissioner's initial administrative interpretation allowing the deduction, although perhaps of some help, is at all conclusive. *See Sevcik v. Commissioner of Taxation,* 257 Minn. 92, 103, 100 N.W.2d 678, 686 (1959) (departmental construction of statute may be persuasive but does not preclude a different construction by the courts).

■ We conclude, however, that the section 298.241 tax is included within the phrase of section 298.03(6) allowing a deduction for "any other law imposing on such taconite operations a specific tax for school or other governmental purposes." The Commissioner argues that the rule of *ejusdem generis* governs; that is, when a general descriptive item follows an enumeration of specific items, the general item is restricted in its application to the immediately preceding specific items. In other words, the Commissioner would construe section 298.03(6) to permit deductions in three categories: (1) under section 298.24; (2) under section 298.35; *and* (3) under the enumerated chapters of the 1955 Laws *or* any other similar law. We think, however, within the context of this statute, that the concluding phrase "*or* any other law" (emphasis added) modifies the entire preceding portions of the subdivision rather than merely the immediately preceding clause beginning with "any taxes paid under Laws 1955 * * *." This would explain why, when the legislature in 1971 added section 298.241, which was simply an increase in the production tax, it saw no need to amend section 298.03(6) to mention the new tax statute specifically, since it was covered by the concluding phrase "or any other law." This is how the Commissioner read the law for the first 3 years, and while, as we have said, this administrative interpretation of the law is not binding on the Commissioner nor on us, we think it was the correct reading.

Because of our disposition of the issues which we have now discussed, we need not take up the other issues raised by the parties.

Reversed on the aggregate tax limitation issue, and affirmed on the additional production tax deductibility issue.